## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PATRICK CLOUTIER,<br>    Plaintiff,<br><br>v.<br><br>DYANN BAKER, in her official capacity as Finance Director of the Town of Westerly; THE TOWN OF WESTERLY; MICHAEL HOBIN, individually and in his official capacity as Principal of Westerly High School; DONNA SWEET, individually and in her official capacity as Assistant Principal of Westerly High School; and KEVIN CRONIN, individually and in his official capacity as Assistant Principal of Westerly High School,<br>    Defendants. | C.A. No. 22-427-JJM-PAS |

## ORDER

Patrick Cloutier filed suit against the Town of Westerly and various Westerly school officials, alleging that they violated his First Amendment and Due Process rights when they deprived him of the ability to freely express himself and failed to provide him with notice and an opportunity to be heard before he was terminated. The individually sued Defendants move to dismiss both counts against them in their official capacities as redundant to Mr. Cloutier's claims against the Town. They also move to dismiss the second Count against them in their individual capacities for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. ECF No. 13. The Court agrees with Defendants' arguments and therefore GRANTS their motion to dismiss.

## I.   BACKGROUND

Mr. Cloutier was hired as a substitute teacher at Westerly High School ("WHS") in late 2019 and added detention monitor duties in November 2021.

Assistant Principals Donna Sweet and Kevin Cronin called Mr. Cloutier into a meeting with Principal Michael Hobin to discuss concerns they had regarding his performance. They brought up for discussion Mr. Cloutier's student management in detention, comments he made about COVID-19 and Dr. Anthony Fauci, and his failure to follow WHS's disciplinary referral procedure. During the meeting, he denied making comments about Dr. Fauci but admitted the remaining conduct and defended his actions. As to the disciplinary action, Mr. Cloutier refused to write a disciplinary referral for a student who ripped up an "I Choose to Include" t-shirt in class[1] because the student "did not use any pejorative words, the student was entitled to his opinion, the student was only damaging the t-shirt the school had given to him to keep, and there was no disruption." At the end of the meeting, Mr. Cloutier was terminated.[2]

---

[1] "In mid to late November of 2021, the high school held an event during school to promote diversity and inclusion. Attendance was mandatory for the students. The high school gave the students t-shirts to wear which said 'I Choose To Include.' The students were instructed to wear the t-shirts. One student came into Cloutier's non-academic advisory class afterwards, said 'I choose not to include,' and ripped up the t-shirt." ECF No. 1 at 3, ¶¶ 13-15.

[2] Mr. Cloutier applied for unemployment with the Rhode Island Department of Labor and Training; Human Resources Coordinator for the Town responded to the unemployment claim that he was terminated because he "[d]id not adequately

2

Mr. Cloutier filed this suit against the Town of Westerly and Dyann Baker in her official capacity as Finance Director of Westerly (collectively, the "Town"); Michael Hobin, individually and in his official capacity as Principal at WHS; Donna Sweet, individually and in her official capacity as Assistant Principal; and Kevin Cronin, individually and in his official capacity as Assistant Principal (collectively, the "Individual Defendants") making claims for violation of freedom of speech and association (Count I) and violation of due process (Count II). ECF No. 1. Mr. Cloutier seeks compensatory and punitive damages, attorney's fees, and an injunction ordering Defendants to rehire him as a substitute teacher and detention monitor.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rule of Civil Procedure tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

provide behavior management," and noted that he failed to "report or issue discipline to a disruptive student."

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

First, the Individual Defendants move to dismiss all claims brought against them in their official capacities. Next, the Individual Defendants move to dismiss the Count II due process claim[3] against them in their individual capacities on two grounds: that Mr. Cloutier had no property interest in his employment such that he cannot allege a violation of due process rights and that qualified immunity precludes this claim against these employees in their individual capacities.

### A.   Official-Capacity Claims against the Individuals

Mr. Cloutier argues that he should be able to maintain his claims against the individuals in their official capacities because he seeks injunctive relief that only the

---

[3] Not subject to the Motion to Dismiss are the two counts against the Town, and the claims against the Individual Defendants in their individual capacities in Count I.

4

individuals can provide, specifically he asks the Court to order the individuals to reinstate him to his substitute teaching and detention monitor positions. The Individual Defendants argue that being named in their official capacities is superfluous to the claims against the Town.

The Court agrees with the Town. It is well established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *Andrade v. Perry*, 863 A.2d 1272, 1278 (R.I. 2004). And Mr. Cloutier's official-capacity claims for injunctive relief are brought against *all* Defendants, including the Town; as such, his claims against the individuals in their official capacities are redundant as any injunctive relief the Court may order can be effectuated by the Town.

In response to his argument that the individuals need to stay in the suit because the Town has denied knowledge of the facts of the case in its answer, have different counsel, and may argue different defenses from the individuals, the Court agrees with Defendants that this is not a legal argument, but a logistics one that may impact discovery but not a decision on a motion to dismiss.[4] The Court can grant all the injunctive relief sought by Mr. Cloutier against the Town. The Court GRANTS

---

[4] The claims against the Individual Defendants in their individual capacities in Count I remain, therefore the Mr. Cloutier's logistical concerns are not well founded.

5

Mr. Hobin, Ms. Sweet, and Mr. Cronin's Motion to Dismiss all claims against them in their official capacities.

### B. Individual Capacity Claims in Count II against the Individuals

In Count II, Mr. Cloutier alleges a violation of due process based on constitutionally protected interests–a liberty interest in his freedom of speech, a property interest in his employment as a substitute teacher and/or detention monitor, and a statutory right to due process under R.I. Gen. Laws § 16-12-6. He brings this claim against the Town and the Individuals Defendants in their individual capacities. The Individual Defendants move to dismiss the individual capacity claims against them.

#### 1. Property interest

The United States Supreme Court has established that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A plaintiff may also have a property interest in their government employment "created ... not only by explicit contractual provisions but also by an implied contract or officially sanctioned

6

rules of the work place."[5] *Cheveras Pacheco v. Rivera Gonzalez*, 809 F.2d 125, 127 (1st Cir. 1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972)).

Mr. Cloutier alleges that he had a protected property interest in his employment as a substitute teacher and detention monitor. He argues that he is a "teacher" as Rhode Island state law defines it and therefore was entitled to notice and an opportunity to be heard at the time of his termination under R.I. Gen. Laws § 16-12-6. Defendants counter that he was a substitute teacher, employed on an at will basis and so did not have a statutory property interest in his employment.

Generally, only tenured teachers have a property interest in their job. *Barber v. Exeter-W. Greenwich Sch. Comm.*, 418 A.2d 13, 19–20 (R.I. 1980) ("A tenured teacher, who may be dismissed only for good and just cause, G.L. 1956 (1969 Reenactment) § 16-13-3, therefore has a legitimate claim of entitlement to his

---

[5] Mr. Cloutier does not allege or argue that he has a contract with the Town. While he does argue in his opposition that his property interest in his employment was based on a reasonable expectation of continued employment, he does not allege as much in his Complaint. He relies on three "officially sanctioned rules of the workplace" sources from his Complaint but they do not help him. Two of these sources–the Westerly School Department website that states that it does not discriminate based on political affiliation and his assertion that other teachers discussed their political beliefs at school without being disciplined or fired–relate not to his due process claim but only to his Count I First Amendment claim. The third source is an email he received announcing that the Town was using a website called Aesop, "an automated service that greatly simplifies and streamlines the process of recording and managing absences and finding substitutes." ECF No. 1-4. Glossing over the reference in the email that the Town was using Aesop to find substitutes (of which he was one), he argues that this email is evidence that his role as a detention monitor was a regular position that he had a reasonable expectation would continue. Aside from the undisputed fact that he filled in as a detention monitor for less than one month at the time of his termination and was primarily a day-to-day substitute teacher, these allegations are insufficient to invoke a property interest entitled to due process protections.

position and may not be deprived of it without due process of law under the Fourteenth Amendment."). R.I. Gen. Laws § 16-13-3 provides that a teacher acquires tenure by completing a probationary period of satisfactory teaching defined as three annual contracts within five successive school years. "No tenured teacher in continuous service shall be dismissed except for good and just cause." *Id.* The statute further provides for notice of dismissal to the teacher and a hearing. *Id.*

There is no statute regarding the tenure of substitute teachers or delineating procedural protections conferred upon substitute teachers. That may be because the law views them differently.

> There is a difference between a substitute teacher and a permanently or regularly employed teacher. The General Assembly recognized this difference, and this recognition is to be found in the teachers' tenure legislation. Substitutes, be they long term or per diem, may be certified and at times regularly employed, but in the opinion of the members of this court they remain tenureless teachers.

*Corrigan v. Donilon*, 433 A.2d 198, 201–02 (R.I. 1981).

Mr. Cloutier was a substitute teacher at WHS. In arguing that he had a protected property interest in his employment as a "teacher" according to Rhode Island state law, Mr. Cloutier relies on Chapter 12, "Rights and Duties of Teachers Generally," which defines a teacher as "every person employed as a teacher, supervisor, principal, or superintendent or assistant superintendent, of schools, whether employed in schools supported in whole or in part by public funds, or in colleges, or in public institutions, or in the department of elementary and secondary education." R.I. Gen. Laws § 16-12-1. Defendant counters that substitute teachers are not "teachers" under state law by relying on Chapter 13, "Teacher Tenure Act,"

8

which defines a teacher as "every person for whose position a certificate issued by the department of elementary and secondary education is required by law." R.I. Gen. Laws § 16-13-1.

To determine whether "teacher" in either section includes a substitute teacher, the Court must "examin[e] the plain meaning of the statutory language and consider[ ] the language in the context of the whole statutory scheme." *Darling's v. Ford Motor Co.*, 825 A.2d 344, 346 (Me. 2003). In so doing, the Court "avoid[s] statutory constructions that create absurd, illogical or inconsistent results," and will only look behind the plain language to the legislative history, "if [the Court] find[s] the statute ambiguous." *Id.* "A statute is ambiguous only if it admits of more than one reasonable interpretation." *Gen. Motors Corp. v. Darling's*, 444 F.3d 98, 108 (1st Cir. 2006) (citing *In re Thinking Machs. Corp.*, 67 F.3d 1021, 1025 (1st Cir. 1995)).

Both chapters that the parties rely on cover different aspects of the teaching profession. The Rhode Island Supreme Court has counseled that statutes that relate "'to the same subject matter should be considered together so that they will harmonize with each other and be consistent with their general objective scope.'" *Such v. State*, 950 A.2d 1150, 1156 (R.I. 2008) (quoting *State ex rel. Webb v. Cianci*, 591 A.2d 1193, 1203 (R.I. 1991)). They "are considered to be *in pari materia*, which stands for the simple proposition that 'statutes on the same subject ... are, when enacted by the same jurisdiction, to be read in relation to each other.'" *Such*, 950 A.2d at 1156 (citing *Horn v. S. Union Co.*, 927 A.2d 292, 294 n.5 (R.I. 2007)). Because these two statutes relate to the same subject matter, the Court will read

9

them together to discern whether a substitute teacher is entitled to the same protections as a tenured, probationary, or contractual teacher.

The chapter that Mr. Cloutier presses, R.I. Gen. Laws § 16-12-1, enumerates other educator roles in the schools but does not mention substitute teachers in the definition—essentially it states that a teacher is "every person employed as a teacher" and Mr. Cloutier asserts that this broad definition necessarily includes substitute teachers. While the language itself is not ambiguous, it does employ circular reasoning that is unhelpful for this purpose—a definition that uses the word itself in the definition does nothing to clarify the subject. R.I. Gen. Laws § 16-13-1, however, defines a teacher as someone who is required by law to be certified to teach. Reading both statutes together, the Court finds that a day-to-day substitute teacher who is not required to be certified by the Rhode Island Department of Education is not a "teacher" according to state law. Because Mr. Cloutier is not certified to teach, he is not a "teacher" according to the Rhode Island education statutes and thus is not entitled to notice and a hearing under R.I. Gen. Laws § 16-12-6. Therefore, he has failed to state a claim that Defendants deprived him of a constitutional property interest. His due process claim (Count II) against Defendants in their individual capacities is DISMISSED.

### 2. Liberty interest

Mr. Cloutier also alleges that he had a liberty interest in his freedom of speech that required Defendants to provide him with due process. As an initial matter, the Individual Defendants have not moved to dismiss Mr. Cloutier's First Amendment

10

claim so Count I will endure beyond this order. And the Court finds his First Amendment violation allegations in the context of his Fourteenth Amendment claim against them are duplicative of his allegations in Count I. *See Wilson v. Moreau*, 440 F. Supp. 2d 81, 100-101 (D.R.I. 2006) (precluding due process claim as duplicative of First Amendment claim). Moreover, "[b]oth the U.S. Supreme Court and the First Circuit Court of Appeals have unequivocally and repeatedly rejected claims premised on the Fourteenth Amendment when protection is specifically available under other constitutional provisions." *Peña-Peña v. Figueroa-Sancha*, 866 F. Supp. 2d 81, 90 (D.P.R. 2012) (citing cases); *see also Cty. Sand & Gravel Co. v. Town of S. Kingstown*, 160 F.3d 834, 835 (1st Cir.1998) ("When a specific provision of the Constitution protects individuals against a particular kind of [misconduct] by government actors, individuals seeking redress ... must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process."). Because Mr. Cloutier's speech and association claim falls squarely under the First Amendment and his Count I claim, the Court declines to endorse those allegations made in Count II.

## IV. CONCLUSION

The Court GRANTS Mr. Hobin, Ms. Sweet, and Mr. Cronin's Motion to Dismiss. All claims against them in their official capacities are DISMISSED. The individual capacity claims against them in Count II are also DISMISSED. ECF No. 13. The lawsuit continues against the Town (both counts) and against the Individual Defendants, in their individual capacities only (Count I only).

IT IS SO ORDERED

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
Chief Judge
United States District Court

June 27, 2023